[Crim. No. 8119. In Bank. Oct. 1, 1965.]

In re HAROLD ALLEN SPENCER on Habeas Corpus.

402

Ivan E. Lawrence and Arvo Van Alstyne for Petitioner.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, Albert W. Harris, Jr., Edward P. O'Brien and Gordon Ringer, Deputy Attorneys General, for Respondent.

TOBRINER, J.—We adjudicate petitioner's application for a writ of habeas corpus which arises from his conviction of first degree murder and armed robbery. The jury fixed the penalty at death. We affirmed the judgment. (*People* v. *Spencer* (1963) 60 Cal.2d 64 [31 Cal.Rptr. 782, 383 P.2d 134], cert. den. (1964) 377 U.S. 1007 [84 S.Ct. 1924, 12 L.Ed.2d 1055].)

We set forth the bases for our conclusion that the admission of defendant's statements to the police in contravention of his constitutional right to counsel did not cause sufficient prejudice to require reversal. We also give our reasons for

deciding that, since in the instant case the court-appointed psychiatrist testified at the guilt trial as to defendant's incriminating statements, defendant suffered the deprivation of a constitutional right to the presence of counsel during the psychiatric examination. Such testimony, however, alone or combined with other erroneously admitted evidence, did not prejudice defendant.

We explain that the presence of counsel at the psychiatric examination is not constitutionally required so long as the court does not permit the psychiatrist to testify at the guilt trial. If, however, defendant at such trial specifically places his mental condition into issue, the psychiatrist's testimony is admissible, provided that the court renders a limiting instruction that the jury should not regard the testimony as evidence of the truth of defendant's statements so related by the psychiatrist.

Moreover, we point out that *Griffin* v. *California* (1965) 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106], which invalidated the California comment rule, does not apply to the instant case because, under our decisions, *Griffin* cannot be invoked here on collateral attack. In view of the commission of errors condemned in *People* v. *Morse* (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33], we reverse the judgment as to the penalty trial.

The relevant facts may be briefly stated.[1] After a taxicab driver had been shot, witnesses observed petitioner emerge from the taxicab with a blue canvas handbag, throw the bag into the bushes and begin to run. The witnesses did not see anyone other than defendant in or near the cab. After receiving a phone call from one of the witnesses, police officers arrived within minutes in a patrol car and arrested petitioner in the vicinity of the shooting. Wet blood was on his hands and on his clothing; the blood was the same type as the victim's blood. The police found four bloodstained one-dollar bills in defendant's pocket. The driver's wallet, which was discovered in the cab, contained no money. Yet the driver's log showed that he had received a one-dollar fare within one-half hour of the fatal shooting and robbery. The officers found in the bushes a canvas bag which contained some clothes and toilet articles. They lifted from the rear right door of the taxicab a partial print of defendant's palm.

---

[1]The opinion of Justice Schauer rendered in the case upon direct appeal contains a full description of the facts. (*People* v. *Spencer, supra,* 60 Cal.2d 64.)

When first apprehended, petitioner denied having been in or near the cab at any time and asserted that the bag did not belong to him. Upon further interrogation at the police station, petitioner said that while he slept in the back of the taxicab, his companion, named ''Reyes'' or ''Ramos'' or ''Rejos,'' shot the driver.[2] Petitioner claimed that someone awakened him after the shooting and said, ''frisk the body.'' Petitioner declared that after searching the victim's body for money and valuables he left the cab.

Two days later petitioner admitted for the first time that he had purchased the canvas bag. Two months later petitioner told a court-appointed psychiatrist during an examination that he did not know anyone named ''Reyes.'' Police officers testified at the trial as to petitioner's statements; a tape recording of one of the interrogations was played to the jury. In spite of petitioner's withdrawal of his plea of not guilty by reason of insanity before the trial, the court-appointed psychiatrist related at the trial petitioner's statements during the examination.

(1) *Petitioner's right to counsel during interrogations.*

■ Petitioner may successfully pursue the remedy of habeas corpus to test the validity of the conviction upon the ground that he suffered an unconstitutional deprivation of his right to counsel during the interrogations by the police. We hold, however, that, although the court erred in admitting petitioner's incriminating statements in the absence of the requisite warnings, petitioner did not thereby sustain such prejudice as to require reversal.

We have specified the basis for collateral attack upon judgments rendered in cases in which petitioner asserts, as here, an unconstitutional deprivation of counsel. Petitioner relies upon these cases: *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], *Massiah* v. *United States* (1964) 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246], and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. *In re Lopez* (1965) 62 Cal.2d 368, 372 [42 Cal.Rptr. 188, 398 P.2d 380], holds that ''. . . *Massiah* may not serve as the basis for collateral attack upon judgments which have become final before the date upon which the United States Supreme Court rendered that decision [May 18, 1964], nor may *Escobedo* or *Dorado* be applied to cases which

---

[2]Petitioner said he first met ''Reyes'' at Folsom Prison. Attempts to locate this supposed individual have been futile.

have become final prior to the date that the United States Supreme Court rendered the *Escobedo* decision [June 22, 1964]."

In *Linkletter* v. *Walker* (1965) 381 U.S. 618 [85 S.Ct. 1731, 14 L.Ed.2d 601], when faced with the retroactivity of *Mapp* v. *Ohio,* 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933], the United States Supreme Court made clear that judgments not final at the time of the *Mapp* decision were reviewable by a writ of habeas corpus. It thereby rejected the theory that the right to raise such an issue at trial and on appeal is a sufficient deterrent to police activity. (See also *Henry* v. *Mississippi,* 379 U.S. 443 [85 S.Ct. 564, 570, 13 L.Ed.2d 408]; but cf. *In re Harris* (1961) 56 Cal.2d 879, 880, 886 [16 Cal.Rptr. 889, 366 P.2d 305] [concurring opinion].)

The United States Supreme Court, in *Linkletter,* defines "final judgment"; it states, "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in *Mapp* v. *Ohio.*" (*Linkletter* v. *Walker, supra,* 381 U.S. 618, 622, fn. 5.) In *Linkletter* the petitioner had not petitioned for certiorari within the time allowed for such petition.[3] Thus the Supreme Court has in substance defined finality as denoting that point at which the courts can no longer provide a remedy to a defendant on direct review. If defendant does petition for certiorari within the requisite time period the avenue of direct review remains open until the denial of that petition; at that time the judgment becomes final. Since in the instant case the United States Supreme Court did not deny petitioner's petition for certiorari prior to the time the court rendered the *Escobedo* and *Massiah* cases, his judgment did not become final prior to those decisions.[4]

Under the United States Supreme Court's view of finality, federal habeas corpus will therefore be available to review petitioner's judgment. (See *Fay* v. *Noia* (1963) 372 U.S. 391, 438 [83 S.Ct. 822, 9 L.Ed.2d 837].) Whether or not we are compelled to afford defendants a comparable state collateral remedy (see *Case* v. *Nebraska* (1965) 381 U.S. 336 [85 S.Ct.

---

[3]Ninety days after the entry of the judgment in the state court (28 U.S.C. § 2101, subd. (d); rule 22, Rules of the Supreme Court of the United States).

[4]The petition for certiorari was denied on June 22, 1964. (377 U.S. 1007 [84 S.Ct. 1924, 12 L.Ed.2d 1055].)

1486, 14 L.Ed.2d 422]; *Henry* v. *Mississippi, supra,* 379 U.S. 443 [85 S.Ct. 564, 13 L.Ed.2d 408]; *In re Shipp* (1965) 62 Cal.2d 547, 553 fn. 2 [43 Cal.Rptr. 3, 399 P.2d 571]; 76 Harv. L.Rev. (1963) 1253, 1269), the availability of the federal remedy makes its pointless for us to refuse to do so, when, as in this case, defendant is entitled to a new trial on the issue of penalty. Moreover, the grant of state collateral relief in these circumstances accords with our traditional habeas corpus rules. This court normally affords collateral relief on constitutional grounds if the petitioner had no opportunity to raise the constitutional issue at trial and on appeal. (See *In re Dixon* (1953) 41 Cal.2d 756, 760-761 [264 P.2d 513]; *In re Shipp, supra,* 62 Cal.2d 547, 551-553.) Petitioner had no such opportunity when, as in this case, the new constitutional right had not been declared at those times. (See *People* v. *Hillery* (1965) 62 Cal.2d 692, 711-712 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Kitchens* (1956) 46 Cal.2d 260, 262-263 [294 P.2d 17].) Petitioner may therefore invoke *Escobedo, Massiah,* and *Dorado* collaterally to attack his judgment.

Petitioner's statements should not have been admitted since, prior to uttering the statements, which were elicited during the accusatory stage, he had not been advised of his rights to counsel and to remain silent and he had not otherwise waived those rights. With the exception of his first statement, which was a denial that he had been in the cab, petitioner gave the statements, after his arrest, during interrogations at the police station. In the course of an interrogation conducted by two police officers and a deputy district attorney at the police station on the night of the crime, petitioner first related his story that he had been in the cab. He repeated the story to other officers while it was being recorded. As we said on appeal, the record discloses a sequence of queries by the interrogators that ''were . . . expressions of [their] understandable impatience with defendant's seemingly very selective memory.'' (60 Cal.2d at p. 81.) Under these circumstances, petitioner was being subjected at that time to a process of interrogations that lent itself to eliciting incriminating statements.

Since, in the instant case, at the time petitioner had given his statements the two conditions specified in *People* v. *Stewart* (1965) 62 Cal.2d 571, 577 [43 Cal.Rptr. 201, 400 P.2d 97], had occurred—that is, the officers had arrested him and they had undertaken a process of interrogations that lent itself to eliciting incriminating statements—''the accusatory or critical

stage [had] been reached and [he was] entitled to counsel.'' In the absence of any indication in the record that defendant had been advised of his rights to counsel and to remain silent prior to making the statements, or that he had otherwise waived those rights, we must conclude that the statements should not have been admitted into evidence. (*Id.* at p. 581; *People* v. *Dorado, supra,* 62 Cal.2d 338.)

The erroneous admission of such statements did not, however, constitute such prejudice to petitioner as to require reversal. (See *Fahy* v. *Connecticut* (1963) 375 U.S. 85 [84 S.Ct. 229, 11 L.Ed.2d 171]; Cal. Const., art. VI, § 4½.)

Petitioner admitted that he was in the taxicab at the time of the shooting, but claimed that, while he slept, another person shot the driver. He admitted searching the body for money and valuables, but said that he did so after the shooting. Thus, his story, which if believed would have absolved him of a murder charge, amounted to an exculpatory statement.[5] Petitioner's later admission that he owned the bag found near the scene of the crime conflicted with earlier denials of such ownership.

As related above, three witnesses observed defendant emerge from the cab immediately after the driver had been shot. Shortly thereafter, the police apprehended defendant near the scene of the crime; defendant was covered with blood that was of the same type as the victim's. The police discovered defendant's palmprint on the door of the cab. The witnesses did not see anyone else leave the cab. The police took bloodsoaked dollar bills from the person of petitioner; although the victim had received payment for a fare a short time before the robbery, his wallet was empty.

In view of this overwhelming evidence, the erroneous admis-

[5]Petitioner also stated in the tape-recorded interview: ''I am stuck. I am stuck. I know that, so why should I give you a bunch of hooey— I mean, why should I do that? I mean, I know I am going to go, so I mean, let's face it. I am not trying to squeeze out of anything because I am just as much a part of this as anyone else was . . . I am just as guilty as any of them.'' These remarks, although indicating consciousness of guilt, do not amount to a confession of the crime; a confession, as distinguished from petitioner's statements, '' 'leaves nothing to be determined, in that it is a declaration of [defendant's] intentional participation in a criminal act.' '' (*People* v. *Fitzgerald* (1961) 56 Cal.2d 855, 861 [17 Cal.Rptr. 129, 366 P.2d 481].) Since petitioner's statements do not amount to a confession, they are not prejudicial per se and thus do not automatically require reversal. (*People* v. *Schader* (1965) 62 Cal.2d 716, 728 [44 Cal.Rptr. 193, 401 P.2d 665]; *People* v. *Stewart, supra,* 62 Cal.2d 571, 581; *People* v. *Dorado, supra,* 62 Cal.2d 338, 356, 368.)

sion of the statements did not sufficiently prejudice defendant so as to require a reversal. (See *Fahy* v. *Connecticut* (1963) 375 U.S. 85 [84 S.Ct. 229, 11 L.Ed.2d 171]; Cal. Const., art. VI, § 4½.)

(2) *The testimony of the court-appointed psychiatrist at the guilt trial.*

(a) *The right to equal protection of the laws and to protection against self-incrimination.*

 We do not accept petitioner's contention that the testimony of the court-appointed psychiatrist at the guilt trial,[6] which incorporated petitioner's incriminating statements, resulted in a deprivation of his constitutional rights to the equal protection of the law and to protection against self-incrimination.

The admission of the testimony of the court-appointed psychiatrist at the guilt phase of the trial did not violate the equal protection clause of the Fourteenth Amendment. Petitioner asserts that if he had been financially able to afford the services of a private psychiatrist he could have preliminarily determined the advisability of a plea of insanity and at the same time prevented, pursuant to the lawyer-client privilege, the disclosure of any of his statements to the psychiatrist. (*In re Ochse* (1951) 38 Cal.2d 230 [238 P.2d 561].) We disposed of this contention on appeal. (*People* v. *Spencer, supra,* 60 Cal.2d 64, 83.) Petitioner presents no authorities subsequent to our decision compelling a different result. (But see *People* v. *Spencer, supra,* 377 U.S. 1007 [84 S.Ct. 1924, 12 L.Ed.2d 1055] [Goldberg, J., *dissenting* to the denial of the petition for certiorari].)[7]

We also held on appeal that the testimony of the court-

---

[6]Section 1026 of the Penal Code provides that if a criminal defendant pleads not guilty by reason of insanity and also enters other pleas, he shall first be tried on the other pleas and presumed sane at the trial. If he is found guilty, the issue of sanity is then tried before the same jury or a new one. "This separation of a criminal case involving the defense of insanity into two parts has produced in California a system that is popularly designated the 'bifurcated trial.'" Louisell and Hazard, *Insanity as a Defense: The Bifurcated Trial* (1961) 49 Cal.L. Rev. 805.)

[7]A recently enacted statute, effective January 1, 1967, makes privileged the communications between a defendant and a psychotherapist appointed by order of the court upon request of defendant's lawyer "in order to provide the lawyer with information needed so that he may advise defendant whether to enter a plea based on insanity or to present a defense based on his mental or emotional condition." (Cal.Evid.Code, § 1017; see Cal. Law Revision Com., Recommendation Proposing an Evidence Code (1965) 197.)

appointed psychiatrist did not deprive petitioner of his constitutional protection against self-incrimination, basing our ruling upon the cases of *People* v. *Ditson* (1962) 57 Cal.2d 415, 447 [20 Cal.Rptr. 165, 369 P.2d 714], and *People* v. *Combes* (1961) 56 Cal.2d 135, 149 [14 Cal.Rptr. 4, 363 P.2d 4]. Petitioner now argues that we must reexamine these cases in view of the holding in *Malloy* v. *Hogan* (1964) 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653], to the effect that the Fifth Amendment privilege against self-incrimination applies to the states through the due process clause of the Fourteenth Amendment and that they must follow and apply federal standards. Yet to our knowledge no federal case has held that the introduction at the guilt phase of the trial of a defendant's statements to a court-appointed alienist violates his constitutional right against self-incrimination. (See Note (1962) 8 Utah L.Rev. 141; cf. Note (1962) 51 Geo. L.J. 143; *Jones* v. *United States* (1961) 296 F.2d 398, 405; *Fouquette* v. *Bernard* (1952) 198 F.2d 860; *United States* ex rel. *Daverse* v. *Hohn* (1952) 198 F.2d 934, 937, but cf. *Killough* v. *United States* (1964) 336 F.2d 929, 932.)[8]

Our previous decisions on this issue rested upon the California constitutional provision protecting against self-incrimination. (Cal. Const., art. I, § 13.) Without the comment rule, recently held to be unconstitutional (*Griffin* v. *California* (1965) 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106]), the constitutional provision of this state is practically identical to the Fifth Amendment of the United States Constitution.[9] In the absence of a United States Supreme Court decision or a significant body of federal law compelling a contrary result, we do not believe that we must overrule our recent cases.

(b) *The right to counsel.*

We point out that petitioner suffered a violation of his right to counsel in that the court-appointed psychiatrist disclosed at the guilt trial statements uttered by petitioner at the psy-

---

[8]Title 18, United States Code, section 4244, provides that ''No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section [examination to determine if the accused is competent to stand trial], whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding.'' (See *Edmonds* v. *United States* (1958) 260 F.2d 474; *Winn* v. *United States* (1959) 270 F.2d 326.)

[9]''No person shall . . . be compelled, in any criminal case, to be a witness against himself. . . .'' (Cal. Const., art. I, § 13.) ''No person . . . shall be compelled in any criminal case to be a witness against himself. . . .'' (U.S. Const., Amend. V.)

chiatric examination. Such disclosure did not, however, cause prejudice to petitioner that requires reversal. We likewise explain certain limitations upon a defendant's right to counsel with respect to the psychiatric examination.

In *Massiah* v. *United States, supra,* 377 U.S. 201, 206, the United States Supreme Court held that "the petitioner was denied the basic protections of that guarantee [of counsel] when there was used against him at his trial evidence of his incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." Although the court-appointed psychiatrist, an agent of the court, does not necessarily seek to elicit incriminating statements for use by the prosecution as did the agent in *Massiah,* he does question a defendant about the facts of the crime, and any incriminating statements of a defendant so procured may be utilized by the prosecution at the guilt trial.

The fact that the purpose of the psychiatric interview is not to gather evidence for the prosecution serves to compound the unfairness of the psychiatrist's testimony; an agent of the court in reality lulls a defendant into making incriminating statements that may be used against him at the guilt trial. (Cf. *Leyra* v. *Denno* (1954) 347 U.S. 556 [74 S.Ct. 716, 98 L.Ed. 948]; Diamond & Louisell, *The Psychiatrist as an Expert Witness: Some Ruminations and Speculations* (1965) 63 Mich.L.Rev. 1335, 1349.) The psychiatric examination occurs during a " 'critical period of the proceedings' " (*Massiah* v. *United States, supra,* 377 U.S. 201, 205); if defendant's statements to the psychiatrist may be introduced at the guilt trial, defendant's need of counsel is as acute during the psychiatric interview as during the police interrogation. ■ Accordingly, we hold that if the court-appointed psychiatrist's testimony as to petitioner's incriminating statements was to be admissible, petitioner was entitled to the presence of counsel during the psychiatric examination.

■ Although petitioner's counsel could have informed him of his right to refuse to speak at all to the court-appointed psychiatrist (*People* v. *French* (1939) 12 Cal.2d 720 [87 P.2d 1014]; see *People* v. *Bickley* (1962) 57 Cal.2d 788, 792 [22 Cal.Rptr. 340, 372 P.2d 100]; *People* v. *Strong* (1931) 114 Cal.App. 522 [300 P. 84]), the right to the presence of counsel during psychiatric interviews had not then been established. (See *People* v. *Stewart, supra,* 62 Cal.2d 571, 581; Note (1962) 51 Geo.L.J. 143, 161-162.) Thus petitioner could not have knowingly and intelligently waived his right to the

presence of counsel during the interview. (*Ibid.*; see *People v. Dorado, supra,* 62 Cal.2d 338.) Consequently, the court should not have admitted at the guilt phase of the trial the testimony of the psychiatrist.

The erroneous admission of the court-appointed psychiatrist's testimony, however, did not sufficiently prejudice defendant so as to compel a reversal. The psychiatrist testified that petitioner stated that he had never known a person named Reyes at Folsom and had never met a person named Reyes. This statement conflicts with petitioner's earlier statement to the police that his companion, a man named ''Reyes'' or ''Ramos'' or ''Rejos,'' whom he had known at Folsom Prison, had shot the cab driver. But witnesses had testified that they did not see anyone except the petitioner leave the cab after the shooting. Moreover, the police ''directed a letter to the Department of Corrections in an effort to track down 'Ramos' (or 'Reyes' or 'Rejos'), but [were] unable to accomplish any related additional investigation on the basis of the department's response.'' (60 Cal.2d at p. 73.)

Based upon the evidence as outlined above, we cannot perceive how the psychiatrist's testimony, alone or combined with the other erroneously admitted evidence, could have affected the verdict of guilt. Thus the erroneous admission of that testimony did not result in a ''miscarriage of justice'' (see *Fahy* v. *Connecticut* (1963) 375 U.S. 85 [84 S.Ct. 229, 11 L.Ed.2d 171] ; Cal. Const., art. VI, § 4½) requiring reversal.

Although we have held that the court-appointed psychiatrist's testimony as to petitioner's incriminating statements should not have been admitted at the guilt trial because petitioner had been deprived of his constitutional right to the presence of counsel during the psychiatric examination, we recognize that such presence may largely negate the value of the examination. Surely the presence and participation of counsel would hinder the establishment of the rapport that is so necessary in a psychiatric examination. (*Durst* v. *Superior Court* (1963) 222 Cal.App.2d 447, 452-454 [35 Cal.Rptr. 143] ; *New Jersey* v. *Whitlow* (1965) 45 N.J. 3 [210 A.2d 763].) As Judge Bazelon has said, ''The basic tool of psychiatric study remains the personal interview, which requires rapport between the interviewer and the subject.'' (*Rollerson* v. *United States* (1964) 343 F.2d 269, 274; see Krash, *The Durham Rule and Judicial Administration of the Insanity Defense in the District of Columbia* (1961) 70 Yale L.J. 905, 918.) The attendance of counsel at the interview might thus frus-

trate the legislative goal of obtaining the evaluation of defendant's mental state by an impartial expert in the event of an insanity plea. (Pen. Code, § 1027.)

Recognizing the force of the above factors, as well as the constitutional rights of the defendant, we point out that the presence of counsel at the psychiatric examination is not constitutionally required so long as certain safeguards are afforded to defendant. To the described extent we thereby preserve the effectiveness of the psychiatric examination.

■ Before submitting to an examination by court-appointed psychiatrists a defendant must be represented by counsel or intelligently and knowingly have waived that right. Defendant's counsel must be informed as to the appointment of such psychiatrists. (See *People* v. *Price* (1965) *ante*, p. 370 [46 Cal.Rptr. 775, 406 P.2d 55].) ■ If, after submitting to an examination, a defendant does not specifically place his mental condition into issue at the guilt trial, then the court-appointed psychiatrist should not be permitted to testify at the guilt trial. If defendant does specifically place his mental condition into issue at the guilt trial, then the court-appointed psychiatrist should be permitted to testify at the guilt trial, but the court should instruct the jurors that the psychiatrist's testimony as to defendant's incriminating statements should not be regarded as proof of the truth of the facts disclosed by such statements and that such evidence may be considered only for the limited purpose of showing the information upon which the psychiatrist based his opinion.[10]

■ In view of these rules, once a defendant, under the advice of counsel, submits to an examination by court-appointed psychiatrists, he is not constitutionally entitled to the presence of his counsel at the examination. If the defendant does not specifically place his mental condition into issue at the guilt trial, the exclusion of counsel at the examination cannot affect the guilt trial since the psychiatrist may not testify at that trial. If defendant does specifically place his mental condition into issue at the guilt trial, he can offer no valid complaint as to the testimony of the psychiatrist at that

---

[10]In alluding to defendant's specifically placing his mental condition into issue, we do not refer merely to defendant's plea of not guilty. We allude to the proffer at the guilt trial of such defenses as ''diminished capacity'' or epilepsy. In such event the court-appointed psychiatrist may testify at the guilt trial as to defendant's statements given at the psychiatric examination. If defendant does not offer evidence of his mental condition at the penalty trial, the court-appointed psychiatrist may not, of course, testify at that trial.

trial. After voluntarily submitting to the examination, defendant cannot properly preclude expert testimony on a subject that he has himself injected into the trial. Moreover, the limiting instruction furnishes further protection. Thus, whether or not defendant places his mental condition into issue at the guilt trial, the above safeguards are sufficient to justify the exclusion of counsel from the psychiatric examination and at the same time avoid a deprivation of defendant's constitutional rights.

Although, with these protections, a defendant is not entitled to counsel at the psychiatric examinations, the court may in its discretion authorize defense counsel to be present as an observer, not as a participant. Such authorization would depend on the attitude of the psychiatrists involved. As the Supreme Court of New Jersey has said, "If in their [court-appointed psychiatrists'] view the presence of such a non professional would hinder or operate to reduce the effectiveness of their examination, or if they assert they cannot examine in his presence, the court may in the exercise of its discretion exclude counsel from the examination." (*New Jersey* v. *Whitlow, supra,* 45 N.J. 3, [210 A.2d 762, 776].) Moreover, the court, upon request, may allow a defense psychiatrist to be present during the examination by a court-appointed psychiatrist.

Under this formulation, a defendant's constitutional rights are amply protected, while the court, the prosecution, and the defendant will obtain the benefit of the testimony of an impartial psychiatrist as to defendant's mental condition.

(3) *Petitioner's failure to testify.*

The court rendered an instruction bearing on petitioner's failure to testify. The United States Supreme Court has held that the California comment rule, and more specifically the instruction given in the instant case, constitutes an unconstitutional violation of a defendant's right against self-incrimination. (*Griffin* v. *California, supra,* 380 U.S. 609.) *Griffin* may not be invoked in the instant case, however, since petitioner's judgment became final prior to the date of the *Griffin* decision. (*In re Gaines* (1965) *ante,* p. 234 [45 Cal. Rptr. 865, 404 P.2d 473].)

(4) *The penalty trial.*

At the conclusion of the penalty trial, the judge instructed the jurors that they "may consider that the laws of California provide that a prisoner serving a life sentence

may be paroled, but not until he has served at least seven calendar years.'' The prosecution also referred to the possibility that defendant might be paroled in the future. We held in *People* v. *Morse, supra,* 60 Cal.2d 631, that such instructions and arguments constitute reversible error since they allow the jury to consider a matter solely within the province of the Adult Authority.

We held in *In re Jackson* (1964) 61 Cal.2d 500 [34 Cal. Rptr. 220, 393 P.2d 420], that such an error could be reached on collateral attack and given retroactive application. Under *People* v. *Hines* (1964) 61 Cal.2d 164, 170 [37 Cal.Rptr. 622, 390 P.2d 398], we must reverse the judgment insofar as it relates to the penalty, since ''substantial deviation from the standards established in *Morse*'' has occurred.

The writ is granted only as to the penalty trial of petitioner. The remittitur issued in Crim. No. 7240, *People* v. *Spencer* (1963) 60 Cal.2d 64 [31 Cal.Rptr. 782, 383 P.2d 134], is recalled and the judgment is reversed only insofar as it relates to the death penalty. Petitioner is remanded to the custody of the Superior Court of Los Angeles County for a new penalty trial.

Traynor, C. J., Peters, J., and Peek, J., concurred.

BURKE, J.—I concur in that portion of the majority opinion holding that the judgment as to guilt should not be reversed for the alleged errors being raised on habeas corpus after the judgment has become final.

I dissent from that portion of the opinion which reverses the judgment imposing the death penalty. In that connection, I would deny the writ for the reasons set forth in the prior opinion of this court in July 1963 when the judgment of conviction of this defendant and the sentence of death were both affirmed after full review and consideration following which the United States Supreme Court denied certiorari (377 U.S. 1007 [84 S.Ct. 1924, 12 L.Ed.2d 1055]).

The majority base their reversal of the death penalty on *People* v. *Morse,* 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33]. In this connection, I refer to the dissents of Mr. Justice White and Mr. Justice Schauer in *People* v. *Terry,* 57 Cal.2d 538, 569, 572 [21 Cal.Rptr. 185, 370 P.2d 985]; and of Mr. Justice Schauer in *People* v. *Hillery,* 62 Cal.2d 692, 714-715 [44 Cal.Rptr. 30, 401 P.2d 382], wherein he pointed out that section 4½, article VI, of the California Constitution ''per

emptorily forbids this court to reverse for mere *error* 'as to any matter of pleading, or . . . procedure,' *whether prejudicial or otherwise,* '*unless,* after an examination of the entire cause, including the evidence, the court shall be of the opinion that *the error complained of* has resulted in a miscarriage of justice.' "

In the instant case, as in *Hillery,* there is no suggestion that there is any doubt whatsoever as to the guilt of this defendant, or the justness of the verdict. Under these circumstances there can be no reasonable probability that a result more favorable to the defendant would have been reached in the absence of the error and a reversal of a judgment of a trial court based thereon in itself results in a miscarriage of justice in violation of the prohibitions of section 4½, article VI of the California Constitution. (*People* v. *Watson,* 46 Cal.2d 818, 835 [299 P.2d 243].)

See also dissenting opinions in *In re Lessard,* 62 Cal.2d 497, 513-514 [42 Cal.Rptr. 583, 399 P.2d 39], and *In re Gaines, ante,* p. 234 [45 Cal.Rptr. 865, 404 P.2d 473].

McComb, J., and White, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.