66 Cal.2d 721 (1967)
In re OSCAR SHIPP on Habeas Corpus.
Crim. No. 9539. 
Supreme Court of California. In Bank. 
May 24, 1967.
 Oscar Shipp, in pro. per., and Frederic Campagnoli, under appointment by the Supreme Court, for Petitioner.
 Thomas C. Lynch, Attorney General, Edward P. O'Brien and Robert R. Granucci, Deputy Attorneys General, for Respondent.
 TOBRINER, J.
 Petitioner seeks a writ of habeas corpus on the ground that he is unlawfully imprisoned under a judgment of conviction for first degree murder. A jury convicted petitioner of two counts of second degree robbery and one count of first degree murder. The court sentenced him to the term prescribed by law for the first two counts; the jury fixed the punishment at death on the murder count. On petitioner's automatic appeal (Pen. Code, 1239, subd. (b)) we affirmed the judgment in all respects, holding that the erroneous denial of a request for discovery did not prejudice petitioner. (People v. Shipp (1963) 59 Cal.2d 845 [31 Cal.Rptr. 457, 382 P.2d 577].) The United States Supreme Court denied a petition for certiorari. (Shipp v. California (1964) 377 U.S. 999 [12 L.Ed.2d 1049, 84 S.Ct. 1927].)
 After the above proceedings petitioner sought his first writ of habeas corpus in this court. (In re Shipp (1965) 62 Cal.2d 547 [43 Cal.Rptr. 3, 399 P.2d 571].) In that instance we reversed the judgment as to penalty because of errors of the type condemned in People v. Morse (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33]. Although petitioner also then contended, as he does now, that the trial court improperly permitted the introduction of his extrajudicial statements procured by the police without informing him of his rights to counsel and to remain silent under People v. Dorado (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], we held that the judgment had become final prior to the rendition of Escobedo *723 v. Illinois (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; he was therefore not entitled to relief.petitioner then sought certiorari in the United States Supreme Court to review our decision; that court denied his petition. (Shipp v. Wilson (1966) 382 U.S. 1012 [15 L.Ed.2d 528, 86 S.Ct. 623].) As of the date of the presentation of the instant petition petitioner awaited a new penalty trial. When we issued the order to show cause we ordered a stay of that proceeding pending the outcome of the instant petition.
 [1] Petitioner now properly raises the Escobedo issue in the pending petition in light of our intervening decision in In re Spencer (1965) 63 Cal.2d 400 [46 Cal.Rptr. 753, 406 P.2d 33]. In that case we adopted, for purposes of applying the Escobedo doctrine, the definition of finality set forth in Linkletter v. Walker (1965) 381 U.S. 618 [14 L.Ed.2d 601, 85 S.Ct. 1731]: "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed. ..." (381 U.S. 618 at p. 622 fn. 5, 14 L.Ed.2d 601 at p. 604.)
 In re Spencer, supra, 63 Cal.2d 400, involved a chronological situation parallel to that in the instant case. In the pending matter the United States Supreme Court denied a petition for certiorari (Shipp v. California, supra, 377 U.S. 999) on June 22, 1964, the same day that the high court handed down the Escobedo decision. In People v. Spencer (1963) 60 Cal.2d 64 [31 Cal.Rptr. 782, 383 P.2d 134], the Supreme Court also denied certiorari on June 22, 1964. (Spencer v. California (1964) 377 U.S. 1007 [12 L.Ed.2d 1055, 84 S.Ct. 1924].) When the defendant in Spencer then petitioned this court for a writ of habeas corpus we held: "Since in the instant case the United States Supreme Court did not deny petitioner's petition for certiorari prior to the time the court rendered the Escobedo [decision], his judgment did not become final prior to those decisions." (In re Spencer, supra, at p. 405.) We concluded that, "Petitioner may therefore invoke Escobedo ... and Dorado ... to attack his judgment." (Id at p. 406; see People v. Treloar (1966) 64 Cal.2d 141 [49 Cal.Rptr. 100, 410 P.2d 620]; In re Varnum (1965) 63 Cal.2d 629 [47 Cal.Rptr. 769, 408 P.2d 97]; People v. Arguello (1965) 63 Cal.2d 556 [47 Cal.Rptr. 485, 407 P.2d 661]; People v. Polk (1965) 63 Cal.2d 443 [47 Cal.Rptr. 1, 406 P.2d 641], for applications of the Spencer doctrine resulting in reversals.) We have recently reaffirmed our holding *724 that we apply Escobedo and Dorado "to all ... cases which had not become final before June 22, 1964." (People v. Rollins (1967) 65 Cal.2d 681, 691 [56 Cal.Rptr. 293, 423 P.2d 221].) Accordingly, we must resolve the merits of petitioner's contentions.
 The opinion in petitioner's automatic appeal sets out the facts in detail (People v. Shipp, supra, 59 Cal.2d 845, 846-849); a summary of the events relevant to the present issue will suffice here. The prosecution's case consisted of evidence tending to show that on the night of December 30, 1961, two persons had beaten and robbed two elderly men in their hotel rooms. One of the two, a Mr. Hawley, died six days later as a result of the beating. Oscar Shipp and his codefendant, La Verne Jones, both of whom resided in the same hotel, were seen there on the night in question. In Shipp's room the police found two bank passbooks and a journal behind the refrigerator. They also discovered spots that appeared to be bloodstains on Shipp's jacket and on one of his shoes. Upon arresting Shipp the police found a key in his pocket which fitted the locks on both the victims' doors, although it would not actually unlock the deceased's door. [fn. 1]
 The principal evidence offered by the prosecution, and the evidence upon which Shipp now posits the Escobedo-Dorado objection, was a tape recording of Jones' and Shipp's statements to four police officers. In this recording, made six days after their arrests, they described in detail how they had robbed each victim.petitioner and his codefendant admitted that they engaged in restraining each victim and "keeping him quiet"; they admitted, too, that they left Hawley lying on the floor. [fn. 2] Jones claimed that Shipp struck the victim; Shipp said that he could not remember striking him and did not think that any of his actions could have caused Hawley's death.
 Both petitioner and his codefendant testified. Although their testimony conflicted in many particulars with the account in the tape recording, they admitted the truth of its substance. Jones indicated that after they left the deceased's room Shipp said he was going to return because he thought *725 they might have "missed something." Shipp denied returning. To the question, "Did you do anything physically to Mr. Hawley except put your hand over his mouth?" Shipp answered, "That's correct, that's all I did."
 We shall point out that petitioner's tape-recorded statements were admitted in violation of his constitutional rights and that their introduction into evidence worked prejudicial error. We shall also explain that Shipp's subsequent testimony did not negate the prejudicial effect of the illegally procured statements.
 [2] The record clearly shows that the police obtained the tape- recorded statements in violation of petitioner's right to counsel and to remain silent unless he was advised of, and waived, those rights. Since the tape-recorded interrogation occurred after Shipp had been in police custody for six days and since the police were then carrying out "a process of interrogations that [lent] itself to eliciting incriminating statements" (Escobedo v. Illinois, supra, 378 U.S. 478), the accusatory stage had clearly been reached. (People v. Stewart (1965) 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97], affd. sub nom. Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].)
 The arresting officer testified that he asked Shipp whether he wanted to make a statement and whether he wanted an attorney and told him that anything he said could be used against him. Shipp testified, however, that the police at no time advised him of his right to counsel or of his right to remain silent. Since this trial took place before the decisions in Escobedo and Dorado the trial court was not alerted to the necessity for ruling on the admissibility of the statements under these decisions and consequently made no finding whether Shipp was warned of his rights but chose to waive them. (People v. Schader (1965) 62 Cal.2d 716, 727-728 [44 Cal.Rptr. 193, 401 P.2d 665]; see People v. Green (1965) 63 Cal.2d 561, 565 [47 Cal.Rptr. 477, 407 P.2d 653].)
 Since the issue of the unlawful admission of the statements is properly before us and since the record fails to show that the statements were admitted in compliance with the requirements of Escobedo-Dorado, this issue remains unresolved. We cannot sustain the conviction upon this defective record if the admission of the statements is otherwise prejudicial. [fn. 3] *726
 [3] On the present record the admission of the statements caused prejudice to petitioner. Applying the test set forth in Chapman v. California (1967) 386 U.S. 18, 26 [17 L.Ed.2d 705, 710, 87 S.Ct. 824] (see People v. Talley (1967) 65 Cal.2d 830, 840, fn. 5 [56 Cal.Rptr. 492, 423 P.2d 564]) we have determined that the People have not "demonstrated, beyond a reasonable doubt, that the [error] did not contribute to" petitioner's conviction.
 Except for the tape recording, the prosecution did not introduce evidence of a persuasive nature that connected Shipp with the crime. The prosecution's additional evidence consisted of testimony that Shipp possessed a key which fitted but would not unlock Hawley's door, that Shipp's jacket and shoe appeared to bear bloodstains, and that passbooks and a journal belonging to Hawley were found in Shipp's room. [fn. 4]
 Assuming but not deciding that under Dorado we could properly consider the testimony of Jones as further evidence against Shipp, we believe that the jury may well have been influenced in returning a verdict of felony murder [fn. 5] by Shipp's own incriminating admissions that he had participated in both robberies, had broken into Hawley's room, pinned him to the floor, and left him lying on the floor bleeding *727 around the face. Consequently the use in evidence of this illegally obtained statement requires reversal.
 The fact that Shipp testified in his own behalf, giving a substantially similar account of his activities on the night of December 30, 1961, does not reduce the prejudicial effect of the illegally obtained statement. [fn. 6] As we have explained in People v. Spencer, ante, p. 158 [57 Cal.Rptr. 163, 424 P.2d 715], "we must consider the likelihood that [the extrajudicial confession] contributed to the verdict by inducing the defendant to admit his guilt in open court. If the improper use of defendant's extrajudicial confession impelled his testimonial admission of guilt, we could hardly sustain his conviction on the theory that his confession to the police, although inadmissible, merely duplicated his subsequent confession to the jury; in that event we could not, in order to shield the resulting conviction from reversal, separate what he told the jury on the witness stand from what he confessed to the police during interrogation." (Pp. 163-164, fns. omitted.)
 [4] "To overcome the likelihood that the erroneous introduction of defendant's extrajudicial confession impelled his testimonial one, the State bears the burden of showing that the causative link between the two confessions had been broken. '[T]he beneficiary of a constitutional error [must] prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' (Italics added.) (Chapman v. California, supra, 386 U.S. 18, 26 [17 L.Ed.2d 705, 710, 87 S.Ct. 824].) The prosecution has failed to do so here." (P. 168.)
 The writ is granted. The remittitur in People v. Shipp, Crim. 7236, is recalled and our judgment of June 18, 1963, vacated. (59 Cal.2d 845.) The judgment is reversed in its entirety, and Shipp is remanded to the custody of the Superior Court of Los Angeles County for a new trial.
 Traynor, C. J., Peters, J., Burke, J., Sullivan, J., and Roth, J. pro tem., concurred. *728
 McCOMB, J.
 I dissent. I would deny the writ of habeas corpus.
 If we followed the procedure suggested by the Attorney General, and were not ultimately required to order a new guilt trial, the prosecution and defense at the pending penalty trial would, in order to enlighten the jury, no doubt seek to introduce evidence relevant to Shipp's guilt, whereas if we now order a new guilt trial the prosecution and defense will not need to reintroduce at a succeeding penalty trial the evidence bearing on the homicide adduced at the new guilt trial. (See People v. Terry (1964) 61 Cal.2d 137, 146 [37 Cal.Rptr. 605, 390 P.2d 381].) Thus, by ordering a new guilt trial we (1) do not increase the burden on the parties, (2) achieve judicial economy by avoiding a costly and time-consuming reference, and (3) bring about an earlier determination of the case.
NOTES
[fn. 1] 1. Hawley, at one point before his death, stated that he had been attacked by "two white men." Shipp and Jones are both Negroes. Wilkinson, the other robbery victim, could not identify his assailants.
[fn. 2] 2. Jones' statements were admitted as to Shipp in order to show Shipp's conduct in response to such statements. (See former Code Civ. Proc., 1870, subd. 3.)
[fn. 3] 3. We cannot accept the Attorney General's suggestion that we appoint a referee to resolve this issue. Although we could appropriately order a reference in this proceeding we face a unique situation here since a new trial on penalty has previously been ordered for Shipp. Even if we ordered a reference we would, if we found the admission of the statement improper, be compelled to order a new guilt trial, and, in any case, a reference would necessitate an extended stay of the pending penalty proceedings.
[fn. 4] 4. On Shipp's automatic appeal we held that under the circumstances the trial court erred in admitting the passbooks and journal into evidence. (People v. Shipp, supra, 59 Cal.2d 845, 849-850 and fn. 1.)
[fn. 5] 5. The trial court gave the following instruction: "All murder which is committed in the perpetration or attempt to perpetrate robbery is murder of the first degree and all other kinds of murder are of the second degree." The court gave no instruction on deliberation, premeditation and willfulness; hence the verdict of first degree murder must have rested on the felony murder rule.
[fn. 6] 6. Although Shipp's extrajudicial statements may not have amounted to a complete confession of felony murder because he did not concede responsibility for Hawley's death, the statements at least constituted complete confessions of both robberies and cannot be deemed merely exculpatory in nature. (See People v. Smith (1966) 63 Cal.2d 779, 802-803 [48 Cal.Rptr. 382, 409 P.2d 222]; cf. People v. Spencer (1967) ante, pp. 158, 169, fn. 10 [57 Cal.Rptr. 163, 424 P.2d 715].)