FRIEDMAN, J.
 

 On rehearing. Petitioner Wallace Dean Cline is confined in Folsom State Prison by force of two separate felony commitments, one issued in Santa Clara County in 1955, the other in Los Angeles County in 1962. He seeks habeas corpus, alleging constitutional vices in his 1962 Los Angeles conviction.
 

 Since petitioner attacks only one of two unsatisfied commitments, the writ cannot accomplish his release.
 
 [1]
 
 Nevertheless, if vulnerable to constitutional attack, the judgment may be reviewed in habeas corpus proceedings because it forms one of the conditions under which he is imprisoned. (See
 
 In re Ford,
 
 66 Cal.2d 183 [57 Cal.Rptr. 129, 424 P.2d 681] ;
 
 In re Estrada,
 
 63 Cal.2d 740, 750 [48 Cal.Rptr. 172, 408 P.2d 948].)
 

 Cline was on parole in Los Angeles County on March 1, 1962. That night a motorist in Glendora saw him with a weapon in his. hand near a gas station and telephone booth.
 
 *115
 
 The motorist immediately informed two deputy sheriffs who were in a marked patrol ear. The deputies drove to the service station. An employee was in the building at the cash register-; the lights of the station were off except inside the building and in the phone booth outside the station. They observed a man later idetified as Cline standing in hack of the station. He appeared to be wearing a mask and was carrying a sawed-off shotgun. The man began to run. One of the officers, having left the ear, identified himself, warning the man that he would shoot if he did not stop and firing a warning shot into the air. Cline did not stop and a foot chase ensued. Both officers pursued him, firing at him. Cline returned their fire. Cline was wounded by gunfire, and Buckley, one of the officers, suffered a superficial gunshot wound. Cline ran to the doorway of a house, where he was ordered to drop his gun. He complied. There was an empty shell in the chamber of his shotgun. Near him on the ground were another empty shell, a rubber face mask and a pair of gloves. He was taken to the jail ward of the county hospital. He had lost much blood and was in a state of shock. Several hours later a deputy sheriff interrogated him. Subsequently at Cline’s trial the deputy testified to the substance of that conversation. The testimony is set forth in the margin.
 
 [2]
 

 As a result of the March 1 affray, Cline was charged with assault with a deadly weapon upon a police officer. (Pen. Code. § 245, subd. (b).) He was also charged with and admitted two prior felony convictions, the 1955 conviction in Santa Clara County and the 1947 conviction in Monterey County. At his trial the accused took the stand in his own defense. lie denied shooting at the officers. He said he had gone to La Puente the evening of the affray to find some work. He was trying to locate a certain man who had told him of available work. He did not have a gun or mask. He wore a
 
 *116
 
 trench coat. As he approached the scene of the crime he heard gunshots and, conscious of his criminal record, became concerned. He passed the driveway of the corner house, saw someone running and started to make a hasty retreat when he was wounded.
 

 Following his claim of innocent involvement, Cline was cross-examined at length by prosecution counsel and impeached by the revelation of four prior felony convictions. The jury returned a verdict of guilt. As a result of petitioner’s prior felony convictions, the court adjudged him an habitual criminal under Penal Code section 644, subdivision (a), and imposed a sentence of life imprisonment on the assault charge.
 
 [3]
 

 Petitioner appealed. His conviction was affirmed by the Second District Court of Appeal, Division Four, on November 22, 1963, and the State Supreme Court denied his application for hearing on February 19, 1964. (See
 
 People
 
 v.
 
 Cline,
 
 222 Cal.App.2d 597 [35 Cal.Rptr. 420].) He commenced preparation of a petition for certiorari to be filed in the United States Supreme Court. On May 7, 1964, that court granted him an extension of time through July 18, 1964, but no petition was ever filed. Later he unsuccessfully sought habeas corpus in the federal Supreme Court, claiming that prison guards ■ prevented completion of his certiorari petition by consficating his papers.
 

 Principally, petitioner claims a violation of federally secured constitutional rights through the trial court’s error in admitting his extrajudicial statement procured by the deputy sheriff, who did not inform him of his rights to counsel and to silence. He relies upon
 
 Escobedo
 
 v.
 
 Illinois
 
 (1964) 376 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and
 
 People
 
 v.
 
 Dorado
 
 (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], The rule announced in those decisions is available as a means of collateral attack by one whose conviction was not final on June 22, 1964, the date of the
 
 Escobedo
 
 decision.
 
 (In re Shipp
 
 (1967) 66 Cal.2d 721 [59 Cal.Rptr. 97, 427 P.2d 761];
 
 People
 
 v.
 
 Rollins
 
 (1967) 65 Cal.2d 681, 691 [56 Cal.Rptr. 293, 423 P.2d 221] ;
 
 In re Spencer
 
 (1965) 63 Cal.2d 400, 404-405 [46 Cal.Rptr. 753, 406 P.2d 33].) Finality occurs when the time for filing a certiorari petition in the United States Supreme Court has elapsed.
 
 (In re Spencer, supra; People
 
 v.
 
 Ketchel
 
 
 *117
 
 (1966) 63 Cal.2d 859, 864 [48 Cal.Rptr. 614, 409 P.2d 694];
 
 People
 
 v.
 
 Polk
 
 (1965) 63 Cal.2d 443, 447-448 [47 Cal.Rptr. 1, 406 P.2d 641].) Because petitioner had secured a 60-day extension of time through July 18, 1964, within which to file his certiorari application,
 
 [4]
 
 his judgment of conviction was not final on June 22, 1964. He may thus invoke the 1964-1965
 
 Escobedo-Dorado
 
 rule as a means of collateral attack on his 1962 conviction.
 
 (In re Spencer, supra,
 
 63 Cal.2d at pp. 405-406;
 
 In re Tedwell
 
 (1967) 251 Cal.App.2d 369 [59 Cal.Rptr. 305].)
 

 The California courts traditionally dispense habeas corpus relief on constitutional grounds when the applicant had no opportunity to raise the claim at the trial and on appeal.
 
 (In re Spencer, supra,
 
 63 Cal.2d at p. 406;
 
 People
 
 v.
 
 Ketchel, supra,
 
 63 Cal.2d at p. 866.) Petitioner was a prison inmate and not represented by counsel while he was preparing his certiorari application. His time for certiorari expired less than one month after the
 
 Escobedo
 
 decision and before the
 
 Dorado
 
 decision was handed down. He had no real opportunity to learn or assert the federal constitutional claim made here. He is properly before us on habeas corpus.
 

 At the time of his hospital interrogation by the deputy sheriff petitioner was under arrest. He was subjected to a process of interrogation designed to elicit incriminatory statements and was not informed that he had rights to counsel and to remain silent.
 
 [5]
 
 The record does not affirmatively show that he waived those rights. Consequently, admission of his extrajudicial statement to the officer was federal constitutional error.
 
 (People
 
 v.
 
 Spencer
 
 (1967) 66 Cal.2d 158, 162-163 [57 Cal.Rptr. 163, 424 P.2d 715] ;
 
 People
 
 v.
 
 Dorado, supra,
 
 62 Cal.2d at pp. 353-354.)
 

 “The introduction in evidence of a
 
 confession
 
 obtained from the defendant in violation of constitutional guarantees is prejudicial per se and compels reversal regardless of other evidence of guilt. [Citations.] By contrast, the erron
 
 *118
 
 eons introduction of an
 
 admission
 
 is not prejudicial per se and the appellate court must weigh its impact on the trial in the light of the appropriate ‘harmless error’ test.”
 
 (People
 
 v.
 
 Powell
 
 (1967) 67 Cal.2d 32, 51, 52 [59 Cal.Rptr. 817, 429 P.2d 137].) Petitioner views his invalid extrajudicial statement as a confession, requiring abrogation of his conviction without regard to independent evidence of guilt. The Attorney General urges that we classify the statement as an admission, determining its prejudicial effect
 
 by
 
 the application of the appropriate harmless error standard.
 

 A confession, in criminal law, is a statement by a person accused of crime to the effect that he is guilty of the crime; unless the statement is broad enough +o include every essential element necessary to make out a case against him, it is not a confession of guilt.
 
 (People
 
 v.
 
 Fowler
 
 (1918) 178 Cal. 657, 664 [174 P. 892] ;
 
 People
 
 v.
 
 Tagle
 
 (1965) 238 Cal.App.2d 16, 19-20 [47 Cal.Rptr. 434] ; hg. den.;
 
 People
 
 v.
 
 Green
 
 (1965) 236 Cal.App.2d 1, 25 [45 Cal.Rptr. 744].) An admission, in contrast, is but an acknowledgment of some fact or circumstance which in itself is insufficient to authorize a conviction and which only tends toward the ultimate proof of guilt.
 
 (People
 
 v.
 
 Fitzgerald
 
 (1961) 56 Cal.2d 855, 861 [17 Cal.Rptr. 129, 366 P.2d 481];
 
 People
 
 v.
 
 Ferdinand
 
 (1924) 194 Cal. 555, 568-569 [229 P. 341] ;
 
 People
 
 v.
 
 Beverly
 
 (1965) 233 Cal.App.2d 702, 712 [43 Cal.Rptr. 743], hg. den.)
 

 Some statements arc easily classified as a confession or admission, others involve difficulty. The meaningful character of the demand that a confession include every essential element of the crime is demonstrated by
 
 In re Shipp, supra,
 
 66 Cal.2d 721. In that case the habeas corpus applicant had been tried for murder committed in the perpetration of a strong-arm robbery. His extrajudicial statements admitted the robbery and an assault which left the victim lying on the floor bleeding. Only the easily-proven fact of death from the injuries was needed to complete the chain of incrimination. The court observed that Shipp’s statements constituted complete confessions of robbery, even though they did not concede responsibility for the victim’s death.
 
 (In re Shipp, supra,
 
 66 Cal.2d at p. 727, fn. 6.) In
 
 Powell,
 
 decided approximately two months after
 
 Shipp,
 
 the court’s unanimous opinion cites
 
 Shipp
 
 as a case involving an admission rather than a confession and permitting the reviewing court to apply a harmless error test.
 
 (People
 
 v.
 
 Powell, supra,
 
 67 Cal.2d at p. 52.)
 

 Petitioner Cline was accused of assault with a deadly
 
 *119
 
 weapon upon Buckley, a peace officer, in violation of Penal Code section 245, subdivision (b).
 
 [6]
 
 Although, as a general rule, the crime of assault does not depend upon proof of specific intent, the aggravated kind of assault described in section 245, subdivision (b), requires the defendant’s reasonable awareness of his victim’s identity as a peace officer engaged in the performance of his duties.
 
 (People
 
 v.
 
 Garcia
 
 (1967) 250 Cal.App.2d 15, 19-20 [52 Cal.Rptr. 186].) As shown in footnote 2 above, Cline gave an affirmative response to the question “if he had shot at the deputies.” Although incriminatory, Cline’s simple affirmation did not expressly or impliedly concede that he was aware of Buckley’s official character at the time he fired the shots. The admission that he had shot at the deputies would have been consistent with a later claim that he had become aware of their character only after being taken into custody. Since the statement left an essential element of the crime to proof by other means, it was an admission, not a confession. Its evidentiary use was not reversible error per se, but permits the reviewing court to weigh its impact on the trial in the light of the appropriate harmless error test.
 
 (People
 
 v.
 
 Powell, supra,
 
 67 Cal.2d at p. 52.) The appropriate test is that stated in
 
 Chapman
 
 v.
 
 California
 
 (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824], which declares that affirmance is possible only if the reviewing court is convinced beyond a reasonable doubt of the error’s harmlessness.
 

 As elaborated in California, the
 
 Chapman
 
 test does not compel the reversal of convictions for errors which are “harmless” in the sense that there is no reasonable possibility that they affected the outcome of the trial; rather, it permits affirmance if compelling evidence of guilt forecloses all reasonable possibility that the jury could have reached any verdict other than one of guilt, even if the error had not occurred.
 
 (People
 
 v.
 
 Ross
 
 (1967) 67 Cal.2d 64, 74 [60 Cal.Rptr. 254, 429 P.2d 606].) Nevertheless, the reviewing court cannot let affirmance rest solely upon the extrajudicial statement’s minor effect upon the jury; must weigh its impact upon the trial; must inquire whether there is a
 
 reasonable
 
 
 *120
 

 possibility
 
 that the inadmissible evidence might have contributed to the conviction; must consider the possibility that it induced the defendant’s choice to take the stand in his own
 
 defense;
 
 must consider also the possibility of prejudice emanating from that action of the defendant.
 
 (People
 
 v.
 
 Spencer, supra,
 
 66 Cal.2d at pp. 163-168.) Whatever his motivation, Cline chose to testify. Seated on the witness chair, he spun a fanciful exculpatory story, arousing the jury’s opinion he was almost certainly a liar and exposing himself to impeachment by evidence of four prior felony convictions. If his courtroom position had any hope of rescue, his decision to take the stand would have demolished it.
 

 Under similar circumstances the court seeks to assess the defendant’s motivations for taking the stand by balancing the relative incriminatory force of the inadmissible extrajudicial statement and of the independent evidence of guilt. (See
 
 In re Shipp, supra,
 
 at pp. 726-727;
 
 People
 
 v.
 
 Spencer, supra, 66
 
 Cal.2d at pp. 167-169.) An exculpatory extrajudicial statement is less likely, an incriminatory statement more likely, to induce the defendant to testify. The heavier the independent evidence of guilt, the greater is the likelihood that it—rather than the extrajudicial statement — induced the defendant’s choice. Even where there is substantial independent evidence of guilt, the defendant’s incriminatory extrajudicial statement may be an “evidentiary bombshell,” creating a reasonable possibility that it induced the courtroom testimony.
 
 (People
 
 v.
 
 Spencer, supra,
 
 66 Cal.2d at p. 169.)
 

 In this ease both the extrajudicial admission and the independent evidence had heavily incriminatory quality. Perhaps the weight of the independent evidence would have moved Cline to take the witness stand regardless of his extrajudicial statement, perhaps not. The wellsprings of motivation are complex and obscure, and this reviewing court is in no position to deny a causal relationship between the incriminating admission and the accused’s courtroom testimony.
 

 Thus we assume a “reasonable possibility” that the inadmissible extrajudicial statement played some motivating role in Cline’s decision to testify.
 
 (People
 
 v.
 
 Spencer, supra,
 
 66 Cal.2d at pp. 167-168.) Viewed in relationship to the massive, immovable, independent evidence of guilt, his decision was harmless. Two law enforcement officers had been eyewitness participants in the gun battle. Both described the affair from the witness stand. They had disclosed their identity to Cline and had fired a warning shot into the air when he commenced to run. He had responded by firing at both, hitting one. He
 
 *121
 
 had been wounded in the exchange of gunfire; the physical wounds of the accused and the officer were palpable facts. Both officers made courtroom identification, pointing to Cline as their assailant. One of the officers had him in continuous view throughout the chase and gun battle. The other’s view was interrupted only briefly during the chase. There was no possible question of his identity as the man wounded in the gun battle. Three live shotgun shells were found in his pocket, one empty shell on the ground near him and another empty shell in the shotgun chamber. Ballistic tests showed that the empty shells were fired by Cline’s shotgun. The prosecution proof was not characterized by inconsistencies in circumstantial evidence which might raise a doubt in the mind of a reasoning juror. (Cf.
 
 People
 
 v.
 
 Ross, supra,
 
 67 Cal.2d at p. 78 (dissent).) The guilt of the accused was unassailably demonstrated by incontestable proof, independently of the error-tinged evidence.
 

 If the notion of impact upon the entire trial is meaningful, neither the extrajudicial statement nor the independent evidence can be weighed on the scale of incrimination without the other. Relative to the massive weight of independent proof, Cline’s extrajudicial incrimination was not an evidentiary bombshell but only a popgun. Neither his inadmissible statement nor an adverse jury reaction to his courtroom testimony could damage a case lost beyond repair. An appellate court could postulate a reasonable possibility of prejudice only by postulating an unreasonable jury. Quite aside from the extrajudicial statement and the testimony of the accused, no reasonable jury could have failed to convict. The members of this court have concluded that the constitutional error was harmless beyond a reasonable doubt.
 

 Petitioner attacks his adjudication of habitual criminality. Penal Code section 644 requires service of a separate prison term for each prior conviction forming the basis of an adjudication of habitual criminality. The trial record is defective, being devoid of pleading or proof that Cline served separate terms on the 1947 Santa Clara County conviction and the 1955 Monterey County conviction.
 
 (People
 
 v.
 
 Collins
 
 (1964) 228 Cal.App.2d 460. 464-465 [39 Cal.Rptr. 595].) The defect may be reached on habeas corpus; the habeas court, however, will receive evidence to determine whether the defect exists in fact.
 
 (In re McVickers
 
 (1946) 29 Cal.2d 264, 269-274, 279-281 [176 P.2d 40].) Certified prison records demonstrate that petitioner served prison and parole time from August
 
 *122
 
 1947 to February 1955, solely under the Santa Clara County commitment; from February 1955 to February 1960 was serving separate but concurrent sentences under both commitments ; having been discharged from the Santa Clara County commitment in February 1960, served prison and parole time solely under the Monterey County commitment untilyhis return to prison September 1962. Such being the facts, he actually served a separate term on each of his prior commitments. (See
 
 People
 
 v.
 
 Reed
 
 (1967) 249 Cal.App.2d 468 [57 Cal.Rptr. 407].)
 

 Petitioner reiterates a claim rejected on his appeal ■— that the crime defined by Penal Code section 245, subdivision (b), is not one on which an adjudication of habitual criminality may rest.
 
 (People
 
 v.
 
 Cline, supra,
 
 222 Cal.App.2d at pp. 599-600.) Assuming that we may properly do so, we see no
 
 reason
 
 to disturb that aspect of the ease, since the contention was correctly rejected.
 

 The petition for habeas corpus is denied and the order to show cause discharged.
 

 Pierce, P.J., and Regan, J., concurred.
 

 Petitioner’s application for a hearing by the Supreme Court was denied December 13, 1967. Burke, J., and Mosk, J., did not participate therein. Peters, J., was of the opinion that the petition should be granted.
 

 [1]
 

 Petitioner’s 1955 conviction in Santa Clara County was for the crime of first degree burglary. The 1955 judgment recites the existence of an earlier (1947) conviction of robbery in Monterey County. The maximum possible term for first degree burglar; is life imprisonment, since Penal Code section 461 fixes punishment for that crime at not less than five years. (Pen. Code, § 671.)
 

 [2]
 

 “A.
 
 I asked the defendant what his name was; he stated it was Willy Johnson. I informed him that he had heen identified by finger prints as Wallace Cline; and he denied that he was Wallace Cline, and he continued to say that he was Willy Johnson.
 

 ‘ '
 
 I asked lxim what his address was. He didn’t answer me.
 

 “1
 
 asked him if he had stolen the vehicle that was across the street from the gas station, lie stated that he had not. I asked him who had stolen the ear. He stated that another man had stolen the ear. I asked him who this other man was; and he didn’t answer me. I asked him if the other man was colored or white. He didn’t answer me.
 

 “I asked him who owned the shotgun. He stated the other man did. I asked him again who the other man was, and he didn’t answer me.
 

 “X asked him if he had shot at the deputies. He stated that he had. That was the substance of the conversation. ”
 

 [3]
 

 In the Los Angeles proceeding, petitioner had also been charged and found guilty of possession of a sawed-off shotgun. (Pen. Code, § 12020.) In deference to the multiple punishment restriction of Penal Code section
 
 654,
 
 the court imposed no sentence on that charge.
 

 [4]
 

 Rule 22, Rules of the United States Supreme Court, provides in part: “1. A petition for writ of certiorari to review the judgment of a state court of last resort in a criminal case shall be deemed in time when it and the certified record required by Rule 21 are filed with the clerk within ninety days after the entry of such judgment. A justice of this court, for good cause shown, may extend the time for applying for a writ of certiorari in such eases for a period not exceeding sixty days.”
 

 [5]
 

 Because petitioner was tried before June 13, 1966, the date of the decision in
 
 Miranda
 
 v.
 
 Arizona,
 
 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], the police procedures set forth in that ease do not apply here.
 
 (People
 
 v.
 
 Rollins, supra,
 
 65 Cal.2d 681.)
 

 [6]
 

 Penal Code, section 245, subdivision (b), provides in part:
 
 “
 
 (b) Every person who commits an assault with a deadly weapon or instrument or by means likely to produce great bodily injury upon the person of a peace officer or fireman, and who knows or reasonably should know that such victim is a peace officer or fireman engaged in the performance of his duties, when such peace officer or fireman is engaged in the performance of his duties shall be punished by imprisonment in the state prison
 
 . . .