Filed 9/23/21  P. v. See CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHAWA SEE,<br><br>Defendant and Appellant. | F079261<br><br>(Super. Ct. No. VCF171678D)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Brett R. Alldredge, Judge.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

This is defendant Chawa See's third appeal relating to his conviction for a 2006 murder he committed when he was 16 years old.[1]  Defendant was sentenced to life without the possibility of parole (LWOP) for murder and 25 years to life for personal use of a firearm.  In 2016, long after judgment was final, defendant filed a successful petition for writ of habeas corpus and was resentenced in accordance with the United States Supreme Court's decisions in *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*) and *Montgomery v. Louisiana* (2016) 577 U.S. 190 [136 S.Ct. 718] (*Montgomery*).

Voters passed Proposition 57 between the grant of defendant's habeas petition and his resentencing hearing, at which the trial court imposed two consecutive terms of 25 years to life.  Defendant timely appealed his sentence on constitutional grounds and in *See II*, this court remanded the matter for the trial court to consider whether to strike the firearm enhancement under Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill No. 620), but otherwise affirmed.  On remand, the trial court denied defendant's motion to strike the firearm enhancement.

Defendant timely appealed.  He claims the trial court erred by not referring him to juvenile court for a transfer hearing under Proposition 57.  In addition, he claims that in failing to take the *Miller* factors and his postconviction conduct into account, the trial court abused its discretion when it declined to strike the firearm enhancement.  Finally, he seeks remand for a *Franklin*[2] hearing.

The People contend that because defendant's 2008 judgment of conviction was final when voters enacted Proposition 57 years later, he is not entitled to relief.  They also

---

[1]    We take judicial notice of our nonpublished prior opinions in *People v. See* (Dec. 18, 2009, F055800) [2009 Cal.App. Unpub. Lexis 10015] [nonpub. opn.] (*See I*) and *People v. See* (Apr. 3, 2018, F075084) [2018 Cal.App. Unpub. Lexis 2229] [nonpub. opn.] (*See II*).  (Evid. Code, §§ 452, subd. (d), 459.)

[2]    *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*).

2.

disagree that the trial court abused its discretion when it denied his request for relief under Senate Bill No. 620 but contend any error was harmless, and they maintain that defendant already had an adequate opportunity to make an appropriate record under *Franklin*.

We conclude that because defendant's sentence was vacated and he was resentenced, judgment is not final within the meaning of *Estrada*[3] and he is entitled to remand for a transfer hearing under Proposition 57. We also conclude that the trial court failed to exercise informed discretion when it denied defendant's request for relief under Senate Bill No. 620, necessitating remand. Finally, although defendant had an opportunity to make a record under *Franklin* and, therefore, would not be entitled to remand on that ground, our resolution of his other claims renders this request for relief moot.

## FACTUAL AND PROCEDURAL HISTORY

As set forth in *See I*, in 2006, when defendant was 16 years old, he and four other males approached the 16-year-old victim, Robert Trevino, in the street. Defendant and his group were members of the Oriental Troops gang. Trevino was a rival Norteño gang member. One of the individuals with defendant shook hands with Trevino and pointed. As Trevino turned to look, defendant shot him in the head from three to four feet away.

In 2008, defendant was tried, along with Aitang See and Lavang See, for the gang-related murder of Trevino.[4] Defendant was convicted of murder and conspiracy to commit murder (Pen. Code, §§ 182/187, subd. (a)),[5] and the jury found the special circumstance allegation and the gang and firearm enhancements true (§§ 190.2, subd. (a)(22), 186.22, subd. (b)(1), 12022.53, subds. (d) & (e)(1)). The trial court

---

[3] *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).

[4] A fourth individual in the group, Billy Her, pled to voluntary manslaughter and testified for the prosecution.

[5] All further statutory references are to the Penal Code unless otherwise stated.

3.

sentenced defendant to LWOP for murder with an additional term of 25 years to life for the firearm enhancement.

Defendant filed a notice of appeal. In *See I*, issued on December 18, 2009, this court ordered correction to the abstract of judgment, but affirmed the judgment. The California Supreme Court denied defendant's petition for review.

In 2016, after the United States Supreme Court issued decisions in *Miller* and *Montgomery*, defendant filed a habeas petition in the trial court seeking relief from his sentence.[6] The trial court granted the petition in May 2016 and in November 2016, voters enacted Proposition 57. In December 2016, the trial court resentenced defendant to 25 years to life for murder with an additional term of 25 years to life for the firearm enhancement.

Defendant appealed, claiming his sentence was the functional equivalent of LWOP and violated the Eighth Amendment. In supplemental briefing, defendant requested remand to allow the trial court to consider whether to strike the firearm enhancement pursuant to newly enacted Senate Bill No. 620, effective January 1, 2018. In *See II*, issued on April 3, 2018, this court rejected defendant's constitutional challenge

---

[6]     *Miller* held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments'" (*Miller*, *supra*, 567 U.S. at p. 465), and although an LWOP sentence is not prohibited, the "offender's youth and attendant characteristics" must be considered (*id.* at p. 483). Thereafter, *Montgomery* stated that *Miller* announced a substantive rule of constitutional law and, as such, the rule applies retroactively. (*Montgomery*, *supra*, 577 U.S. at p. ___ [136 S.Ct. 718, 736].) However, states may "remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." (*Ibid.*) More recently, the United States Supreme Court addressed a disagreement that developed in the lower courts and reiterated that, although states are not precluded from imposing additional limitations in juvenile cases (*Jones v. Mississippi* (2021) ___ U.S. ___, ___, [141 S.Ct. 1307, 1323]), "'*Miller* did not impose a formal factfinding requirement' and … 'a finding of fact regarding a child's incorrigibility … is not required'" (*id.* at p. ___ [141 S.Ct. at p. 1313], quoting *Montgomery*, *supra*, at p. ___ [136 S.Ct. 718, 735]).

to his sentence of 50 years to life, but remanded the matter to allow the trial court to exercise its discretion under Senate Bill No. 620.

On remand, the trial court declined to strike the firearm enhancement. Defendant filed the present appeal.

## DISCUSSION

### I. Availability of Relief Under Proposition 57

#### A. Background

At the time of defendant's crime, "prosecutors were permitted, and sometimes required, to file charges against a juvenile directly in criminal court, where the juvenile would be treated as an adult." (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 305 (*Lara*).) On November 8, 2016, voters enacted Proposition 57, which, in relevant part, "'amended the Welfare and Institutions Code so as to eliminate direct filing by prosecutors." (*Ibid.*) Under Proposition 57, "'[c]ertain categories of minors … [could] still be tried in criminal court, but only after a juvenile court judge conduct[ed] a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated." (*Lara*, *supra*, at p. 305, quoting *People v. Vela* (2017) 11 Cal.App.5th 68, 72 [judgment vacated and cause remanded, reaffirmed at *People v. Vela* (2018) 21 Cal.App.5th 1099] and citing Welf. & Inst. Code, § 707, former subd. (a)(1).)[7]

As we have stated, Proposition 57 was enacted years after defendant was convicted and originally sentenced to LWOP, but between the time his habeas petition was granted and he was resentenced under *Miller*. While defendant's appeal from his resentencing was pending, the California Supreme Court considered the issue of

---

[7] Although not relevant in this case, Proposition 57 was subsequently amended effective January 1, 2019, by Senate Bill No. 1391 (2017–2018 Reg. Sess.). The law as amended now "prohibit[s] minors under the age of 16 from being transferred to adult criminal court." (*O.G. v. Superior Court* (2021) 11 Cal.5th 82, 87, citing Welf. & Inst. Code, § 707, subd. (a)(1)–(2) [finding legislative amendment to Prop. 57 constitutional].)

retroactivity and held that "Proposition 57 applies to all juveniles charged directly in adult court whose judgment was not final at the time it was enacted." (*Lara*, *supra*, 4 Cal.5th at p. 304.) Thus, the issue here is whether defendant's resentencing reopened the judgment such that he is entitled to relief under Proposition 57.[8]

Defendant claims that because he is not challenging his underlying conviction and the judgment following resentencing is not yet final, he is entitled to relief. Relying on *People v. Jackson* (1967) 67 Cal.2d 96 (*Jackson*) and *People v. Kemp* (1974) 10 Cal.3d 611 (*Kemp*), the People take the position that defendant's conviction and sentence are "distinct and severable components of the judgment," and the relevant judgment for purposes of finality in this context is defendant's 2008 judgment of conviction. Therefore, the People reason, judgment was long final in this case when defendant was resentenced and the court's act of resentencing him did not reopen that final judgment for the purpose of affording him relief under Proposition 57. We disagree.

### B.    Analysis

#### 1.    Effect of Resentencing

Retroactive application of ameliorative changes in the law is governed by the presumption articulated in *Estrada*. Under *Estrada*, "[n]ewly enacted legislation lessening criminal punishment or reducing criminal liability presumptively applies to all cases not yet final on appeal at the time of the legislation's effective date. [Citation.] This presumption 'rests on an inference that, in the absence of contrary indications, a

---

[8]    Defendant did not raise the issue of Proposition 57 in his appeal following resentencing or in the trial court, and the California Supreme Court decided *Lara* shortly before this court resolved his appeal in *See II* and remanded the matter under Senate Bill No. 620. However, the People do not argue that defendant has forfeited his claim. (*People v. Anderson* (2007) 152 Cal.App.4th 919, 929 ["A point not argued or supported by citation to authority is forfeited."].) Further, "neither forfeiture nor application of the forfeiture rule is automatic (*People v. McCullough* (2013) 56 Cal.4th 589, 593), and appellate courts have the discretion to consider issues that might otherwise result in claims of ineffective assistance of counsel (*People v. Mattson* (1990) 50 Cal.3d 826, 854), and claims that "involve[] an important issue of constitutional law or a substantial right" (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7).

legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.'" (*People v. Gentile* (2020) 10 Cal.5th 830, 852; accord, *People v. McKenzie* (2020) 9 Cal.5th 40, 44–45 (*McKenzie*); *Lara*, *supra*, 4 Cal.5th at p. 307.)

"*Estrada*[, therefore,] … stand[s] for the proposition that (i) in the absence of a contrary indication of legislative intent, (ii) legislation that ameliorates punishment (iii) applies to all cases that are not yet final as of the legislation's effective date." (*People v. Esquivel* (2021) 11 Cal.5th 671, 675 (*Esquivel*).) *Lara* resolved whether Proposition 57 is retroactive under the *Estrada*, and the California Supreme Court is poised to resolve the issue raised in this case: whether resentencing reopens a final judgment for the purpose of retroactive relief under Proposition 57. (*People v. Padilla* (2020) 50 Cal.App.5th 244, 254–255 (*Padilla*), review granted Aug. 26, 2020, S263375 [resentencing under *Miller* rendered the defendant's sentence nonfinal, entitling him to a transfer hearing under Prop. 57]; *People v. Federico* (2020) 50 Cal.App.5th 318, 324 (*Federico*), review granted Aug. 26, 2020, S263082 [resentencing under § 1170, subd. (d)(1), did not reopen the final judgment and allow for retroactive application of Prop. 57].) As we shall explain, we are persuaded by *Padilla*.

In 1999, the defendant in *Padilla* was convicted of a murder he committed in 1998 when he was 16 years old. (*Padilla*, *supra*, 50 Cal.App.5th at p. 248, review granted.) He was sentenced to LWOP, and the California Supreme Court affirmed the judgment in 2001. (*Ibid.*, review granted.) In 2014, following the *Miller* decision, the defendant filed a petition for writ of habeas corpus seeking resentencing, which the trial court granted. (*Padilla*, *supra*, at p. 248, review granted) The defendant was resentenced to LWOP and while his appeal from that sentence was pending, the United States Supreme Court decided *Montgomery*. (*Padilla*, *supra*, at p. 248, review granted.) The Court of Appeal reversed and remanded the matter for the trial court to resentence defendant with the

7.

added guidance of *Montgomery*. (*Padilla*, *supra*, at p. 248, review granted.) In 2019, the defendant was again resentenced to LWOP and he appealed, seeking relief under Proposition 57. (*Padilla*, *supra*, at p. 248, review granted.)

*Padilla* observed that, pre-*Estrada*, "[f]inality … denoted 'that point at which the courts can no longer provide a remedy to a defendant on direct review'" (*Padilla*, *supra*, 50 Cal.App.5th at p. 252, review granted, quoting *In re Spencer* (1965) 63 Cal.2d 400, 405), and "[o]ur Supreme Court has since applied this definition of finality to the *Estrada* retroactivity rule, stating that an amendatory statute applies in '"any [criminal] proceeding [that], at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it"'" (*Padilla*, *supra*, at p. 252, review granted, quoting *People v. Rossi* (1976) 18 Cal.3d 295, 304). "This rule of finality is easy to apply in a typical case, where a criminal defendant is convicted and sentenced, the judgment is affirmed on appeal, a petition for review in the California Supreme Court is either denied or never filed, and a petition for certiorari in the United States Supreme Court is likewise denied or never filed. But questions have arisen as to how this rule applies in different procedural settings." (*Padilla*, *supra*, at p. 252, review granted.)

Relying on the California Supreme Court's decision in *Jackson* for the proposition that "a collateral proceeding may reopen the finality of a *sentence* for retroactivity purposes, even while the *conviction* remains final," *Padilla* rejected the People's argument that judgment was final in 2001 when the direct appeal procedures were first exhausted. (*Padilla*, *supra*, 50 Cal.App.5th at p. 253, review granted, citing *Jackson*, *supra*, 67 Cal.2d at p. 98, italics added.)[9] *Padilla* reasoned, "[A]ppellant's sentence is

---

[9]    The People also rely on *Jackson* in this case, but for the contrary proposition that the judgment here is final. *Jackson* and *Kemp*, which is also cited by the People, were death penalty cases in which the judgments were affirmed on appeal and became final. (*Jackson*, *supra*, 67 Cal.2d at p. 97; *Kemp*, *supra*, 10 Cal.3d at p. 613.) Subsequently, the California Supreme Court granted the defendants habeas relief as to the penalty. (*Jackson*, *supra*, at p. 97; *Kemp*, *supra*, at

not final:  the superior court vacated his original sentence and resentenced him, we then reversed his new sentence and remanded for another resentencing, and appellant has taken this direct appeal from his second resentencing.  Because appellant's sentence is still pending on direct appeal, his judgment is not final under our Supreme Court's definition of finality for retroactivity purposes." (*Padilla*, *supra*, at pp. 253–254, review granted.)  "Proposition 57's primary ameliorative effect is on a juvenile offender's sentence, independent of the convictions, [and, therefore,] … it applies retroactively to appellant's nonfinal sentence and requires that he receive a transfer hearing." (*Id.* at p. 255, fn. omitted, review granted.)  "A juvenile court's decision in a retroactive transfer hearing to treat the defendant as a juvenile does not disturb the jury's findings; rather, the court must treat the defendant's convictions as juvenile adjudications and impose an appropriate disposition." (*Ibid.*, review granted.)

One day after the decision in *Padilla*, another Court of Appeal came to a contrary conclusion in a case that considered whether, following resentencing under section 1170, subdivision (d), the defendant was entitled to a transfer hearing under Proposition 57.[10]

_____

p. 614.)  After retrial of the penalty phases, the defendants appealed and the court declined to consider challenges they raised as to guilt phase issues. (*Jackson*, *supra*, at p. 98; *Kemp*, *supra*, at pp. 614–615.)  The court explained that for the purpose of applying changes in the law retroactively, judgment was final when the court granted habeas relief and it "reversed the judgment only on the issue of penalty, thereby affording a collateral remedy for a retrospective application of [changes in the law].  The scope of this retrial is a matter of state procedure under which the original judgment on the issue of guilt remains final during the retrial of the penalty issue and during all appellate proceedings reviewing the trial court's decision on that issue." (*Jackson*, *supra*, at pp. 98–99; accord, *Kemp*, *supra*, at pp. 613–614.)  As stated, we are not persuaded by the People's argument.

[10]    As relevant in *Federico*, section 1170, subdivision (d)(1), authorizes the secretary of the California Department of Corrections and Rehabilitation to recommend the trial court recall an inmate's sentence and resentence him or her "in the same manner as if they had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence."  In *Federico*, the recommendation to recall the defendant's sentence stemmed from the trial court's imposition of two enhancements involving infliction of great bodily injury (GBI). (*Federico*, *supra*, 50 Cal.App.5th at p. 322, review granted, citing *People v. Gonzalez* (2009) 178

(*Federico*, *supra*, 50 Cal.App.5th 318, review granted.)  *Federico* concluded that the answer was no because "'[t]he finality of a judgment has been defined as that point at which the courts can no longer provide a remedy on direct review.  This includes the time within which to petition the United States Supreme Court for writ of certiorari.'"  (*Id.* at p. 325, review granted, quoting *In re Pine* (1977) 66 Cal.App.3d 593, 595.)  The court acknowledged that "'[w]hen a sentence is subject to "recall" under section 1170, subdivision (d), the entire sentence may be reconsidered'" (*Federico*, *supra*, at p. 326, review granted, quoting *People v. Garner* (2016) 244 Cal.App.4th 1113, 1118), but stated that the statute "says nothing about 'reopening' a judgment that has been final for years, in order to apply recently enacted laws retroactively" (*Federico*, *supra*, at p. 327, review granted).  "The statute specifically provides that the court may '*resentence* the defendant *in the same manner* as if he or she had not previously been sentenced.'  (§ 1170, subd. (d)(1), italics added.)  It simply allows the court to reconsider its sentencing choices in the original sentence and resentence the defendant."  (*Ibid.*, review granted, citing *People v. Hill* (1986) 185 Cal.App.3d 831, 834.)

Subsequently, the Courts of Appeal in *Lopez* and *Hwang* considered the availability of retroactive relief under Proposition 57 following resentencing under section 1170, subdivision (d), and rejected the holding in *Federico*, instead following *Padilla*.  (*People v. Lopez* (2020) 56 Cal.App.5th 835 (*Lopez*), review granted Jan. 27, 2021, S265936; *People v. Hwang* (2021) 60 Cal.App.5th 358  (*Hwang*), review granted Apr. 14, 2021, S267274.)  In *Lopez*, the court explained, "Because a resentencing under section 1170, subdivision (d)(1) replaces the original sentence, the original sentence is no longer operative, and the finality of the original sentence is no longer material.  The only sentence that matters after resentencing under section 1170, subdivision (d)(1) is the new

---

Cal.App.4th 1325, 1327-1328 [imposition of both GBI enhancement and gang enhancement violates § 1170.1, subd. (g)].)

sentence, which is not final because a resentenced defendant can still obtain review from the California Supreme Court or the United States Supreme Court.  This statutory framework is thus comparable to the procedural posture in *Padilla*, where the trial court vacated the defendant's original sentence and entered a new sentence.  (*Padilla*, *supra*, 50 Cal.App.5th at [p]p. 253–254, review granted.)  Contrary to *Federico*'s framing of the issue, it is not a question of whether the appealability of the new sentence makes the original judgment not final.  (*Federico*, *supra*, 50 Cal.App.5th at p. 326, review granted.)  Rather, the mere existence of the resentence makes the original sentence irrelevant for the purposes of *Lara*."  (*Lopez*, *supra*, at p. 845, review granted; accord, *Hwang*, *supra*, at pp. 366–367, review granted.)

We agree with the reasoning in *Padilla*, *Lopez, and Hwang*.  Moreover, this view is consistent with the California Supreme Court's reasoning in *McKenzie* and *Esquivel*, summarized next.

### 2.     *McKenzie* **and** *Esquivel*

In *McKenzie*, following the defendant's guilty pleas in three cases, the trial court suspended imposition of sentence and granted probation.  Nineteen months later, after the defendant admitted to violating probation, the trial court revoked probation and imposed the sentence.  On appeal, a different panel of this court modified the judgment in part and otherwise affirmed.  (*People v. McKenzie* (Sept. 13, 2017, F073942) [2017 Cal.App. Unpub. Lexis 6254] [nonpub. opn.].)  Approximately one month later, Senate Bill No. 180 (2017–2018 Reg. Sess.) was enacted, under which the defendant's prior drug-related convictions no longer qualified for the sentence enhancement imposed by the trial court.  (*McKenzie*, *supra*, 9 Cal.5th at p. 46.)  The California Supreme Court granted the defendant's petition for review and remanded the matter to this court to reconsider in light of Senate Bill No. 180.  (*People v. McKenzie*, *supra*, F073942 [2017 Cal.App. Unpub. Lexis 6254, review granted and cause transferred Dec. 20, 2017, S244929].)  In a published decision, this court concluded that judgment was not final and, therefore,

11.

Senate Bill No. 180 applied retroactively. (*People v. McKenzie* (2018) 25 Cal.App.5th 1207, 1218, review granted Nov. 20, 2018, S251333.) The California Supreme Court granted review and affirmed. (*McKenzie*, *supra*, 9 Cal.5th at p. 52.)

On review, the People advanced the same argument they do here: "The relevant cutoff point under *Estrada* for applying ameliorative amendments is the date the 'judgment of *conviction* becomes final.'" (*McKenzie*, *supra*, 9 Cal.5th at p. 46, italics added.) The high court flatly rejected the argument that "'judgment of conviction'" refers "only to 'underlying' convictions and enhancement findings, exclusive of sentence." (*Ibid.*) The court explained, "In criminal actions, the terms 'judgment' and '"sentence"' are generally considered 'synonymous' (*People v. Spencer* (1969) 71 Cal.2d 933, 935, fn. 1), and there is no 'judgment of conviction' without a sentence (*In re Phillips* (1941) 17 Cal.2d 55, 58). Moreover, in *Estrada*, we also referred to the cutoff point for application of ameliorative amendments as the date when the 'case[]' (*Estrada*, *supra*, at p. 746) or 'prosecution[]' is 'reduced to final judgment' (*id.* at p. 747). And in *Rossi*, *supra*, 18 Cal.3d at page 304, we stated that an amendatory statute applies in "'any [criminal] *proceeding* [that], at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it."'" (*Ibid.*; accord, *Esquivel*, *supra*, 11 Cal.5th at pp. 677–678.)

*McKenzie* concluded that although the defendant did not appeal the order granting probation, which "'is deemed a "final judgment" for the purpose of taking an appeal'" (*McKenzie*, *supra*, 9 Cal.5th at p. 47, quoting *People v. Chavez* (2018) 4 Cal.5th 771, 786), "[i]It cannot be said that this criminal prosecution or proceeding concluded before the ameliorative legislation took effect" (*McKenzie*, *supra*, at p. 46). "This reading of *Estrada* is consistent with the 'consideration of paramount importance' we identified in that decision: the 'inevitable inference' that the Legislature, having 'determined that its former penalty was too severe,' 'must have intended' that the ameliorative statutory change 'should apply to every case to which it constitutionally could apply.' [Citation.]

12.

A contrary conclusion, we explained, would "'serve no purpose other than to satisfy a desire for vengeance,'" and would have to rest on the impermissible view 'that the Legislature was motivated by [such] a desire.'" (*Id.* at p. 48.)

Recently, in *Esquivel*, the California Supreme Court again addressed the issue of finality in a probation case where the trial court imposed the sentence and stayed its execution, and the defendant did not appeal those orders. (*Esquivel*, *supra*, 11 Cal.5th at p. 673.) Approximately three years later, the defendant violated his probation and the trial court ordered his sentence into effect, after which he appealed. (*Ibid.*) During the pendency of his appeal, Senate Bill No. 136 (2019–2020 Reg. Sess.) was enacted, which entitled him to relief from the prior prison term enhancements imposed in 2015 if judgment in his case was not yet final. (*Esquivel*, *supra*, at p. 673.) The appellate court concluded that the defendant's sentence became final within the meaning of *Estrada* in 2015, when he could have but did not appeal the imposition of sentence. (*Esquivel*, *supra*, at pp. 673–674.)

The California Supreme Court reversed, holding "that a case in which a defendant is placed on probation with execution of an imposed state prison sentence suspended is not yet final [within the meaning of *Estrada*] if the defendant may still timely obtain direct review of an order revoking probation and causing the state prison sentence to take effect." (*Esquivel*, *supra*, 11 Cal.5th at p. 673.) The court recognized that "[p]art of [its] reasoning [in *McKenzie*] was specific to the suspended-imposition context," but "part … was more general …." (*Id.* at p. 678.) It reiterated that *Estrada* speaks to "the finality of the judgment of conviction," "the finality of the '"case[]"' or '"prosecution[],"'" *and* "in terms of the criminal proceeding as a whole." (*Ibid.*) The court declined to "draw any precise constitutional lines to resolve this case," and stated, "The *Estrada* doctrine is one of presumed legislative intent, not of constitutional law. The point is that to the extent *Estrada*'s unarticulated constitutional concerns shed light on the meaning of 'final' for purposes of the presumption of retroactivity, those concerns appear to point toward an

13.

inquiry focused on whether the criminal prosecution or proceeding as a whole is complete." (*Id.* at p. 679.)

### 3. Conclusion

Although the procedural postures in *McKenzie* and *Esquivel* differ from that here, they are nevertheless instructive in evaluating the issue presented in this case. We conclude that because defendant's sentence was vacated and he was resentenced, he is entitled to relief under Proposition 57. The People's view that the relevant judgment is the judgment of conviction is unpersuasive. Defendant is not seeking to vacate his conviction, and remand for a transfer hearing under Proposition 57 will not disturb that conviction.

Through habeas, defendant was granted relief from his original sentence and, therefore, as explained in *Padilla*, *Lopez*, and *Hwang*, in determining the finality of judgment for the purpose of relief under Proposition 57, defendant's original sentence is no longer relevant and the focus is on his resentencing. Proposition 57 was enacted shortly before defendant was resentenced and the judgment following resentencing is not final. Therefore, we shall remand this matter for a transfer hearing.

## II. Exercise of Discretion Under Senate Bill No. 620

In *See II*, this court remanded the matter in light of Senate Bill No. 620 to allow the trial court the opportunity to exercise its discretion to strike the firearm enhancement under section 12022.53, subdivision (h), if it determined it was in the interest of justice to do so. The court declined to strike the enhancement and defendant now claims the court erred because it failed to consider the *Miller* factors or his postsentencing conduct. The People concede defendant's postconviction behavior was relevant, but point out the presumption of correctness applies on review and they contend that any error was harmless. We conclude that the trial court was not aware of the full scope of its discretion, and, therefore, defendant is entitled to remand.

14.

### A.    Procedural Background

Defendant's habeas petition, which is part of the record in this case, included information relevant to *Miller*, such as defendant's family and home environment and his early exposure to gang activity.[11] As well, the petition reflected that defendant did well in school and was not a discipline problem, and that in prison, his behavior was good and he avoided gang activity and prison politics, completed his GED, and held a prison job position that suggested he was trustworthy and had no disciplinary issues. In his motion requesting the trial court strike the firearm enhancement on remand, defendant cited the *Miller* factors and his postconviction behavior for support.

The probation officer's report prepared in advance of the hearing stated, "The defendant argues that since his conviction, he has been a model inmate and has turned his life around, but at the time of sentencing, these factors did not apply. *Probation is not taking into account the defendant's behavior post-conviction*, as it would not have been a factor in the Court's discretion to strike the enhancement. What was a factor, is the defendant's youthful nature, and that of any history of compliance/non-compliance he demonstrated at the time of the offense and conviction." (Italics added.)

During the hearing on defendant's motion to strike the firearm enhancement, the trial court stated at the outset, "In the motion filed on behalf of [defendant], the only factor that I can identify as possibly mitigating is the young age of [defendant], 16, at the

---

[11]    "[U]nder *Miller* a sentencing court considering a sentence of [LWOP] for a juvenile offender must consider evidence that may exist regarding (1) 'a juvenile offender's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"'; (2) '"the family and home environment that surrounds [the juvenile]—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional"'; (3) '"the circumstances of the homicide offense, including the extent of [the juvenile defendant's] participation in the conduct and the way familial and peer pressures may have affected him"'; (4) 'whether the offender "might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"'; and (5) '"the possibility of rehabilitation."'" (*In re Kirchner* (2017) 2 Cal.5th 1040, 1048, quoting *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1388–1389.)

time he committed this offense. It is both relevant and ironic that the victim in this case was also 16 years old. But other than that, I was not able to identify any other mitigating factors. [¶] There are a number of—for lack of a better term—aggravating factors that relate to this Court's exercise of its discretion, which I will state on the record, but if I missed something, [defense counsel], I will certainly allow you to change my mind, if you can. [¶] You may be heard."

In response to defense counsel's argument that the court should consider the standard articulated in *Miller* in deciding whether to strike the firearm enhancement, the trial court commented, "You point to *Miller* factors and you also set forth in your moving papers that the Court of Appeal has already considered the so-called *Miller* factors relating to [defendant's] appeal. If I am to properly exercise my discretion, I agree that I can't simply repeat the fact that he may have used a weapon in this case or the so-called gun as the basis for the enhancement; that's what I think the prohibition is. But I'm obligated to consider all other factors that relate to the legislative intent which still remains in the law that the Court can impose that enhancement when it finds it to be appropriate. [¶] And, again, all I can see or hear from the argument was that [defendant] was relatively—well, not only relatively young, he was very young when he committed this crime, and it is a factor, and I think I'm obligated to consider that." (Italics added.)

The prosecutor argued in relevant part, "[A]s the Court illustrated or stated earlier on the record, there's really nothing else mitigating in the set of facts that we have before us that show anything mitigating besides the defendant's age at the time, which he is the same age as the victim," and "[w]ith regard to what the defense has said about the *Miller* factors, we've already had that hearing that dealt with a separate issue, and we already had the sentence changed as per the *Miller* case to off of a [LWOP] to the life sentence, which is appropriate under the law as it currently stands." (Italics added.)

The court again noted the only mitigating factor was defendant's age and discussed some of the aggravating factors. The court declined to strike the firearm

enhancement, concluding, "If I am to exercise my discretion as required now by [section 12022.53,] sub[division] (h), I can find nothing that comes close to factors in mitigation that would outweigh any factors in aggravation, but, specifically, there is nothing that would support a finding that it would be in the interest of justice to strike the [firearm] enhancement after full consideration of all the comments made both in writing and made in open court."

## B. Standard of Review

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez*, *supra*, 58 Cal.4th at p. 1391; accord, *People v. Flores* (2020) 9 Cal.5th 371, 431–432; *People v. Yanaga* (2020) 58 Cal.App.5th 619, 625 (*Yanaga*).) However, "[i]n the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law'" (*People v. Thomas* (2011) 52 Cal.4th 336, 361), and "'"error must be affirmatively shown"'" (*People v. Giordano* (2007) 42 Cal.4th 644, 666). Further, remand is not required when it would be an idle act. (*People v. Flores*, *supra*, at p. 432, citing *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425; accord, *People v. Jefferson* (2019) 38 Cal.App.5th 399, 409; *People v. Allison* (2019) 39 Cal.App.5th 688, 705–706.)

## C. Analysis

Following the passage of Senate Bill No. 620, section 12022.53, subdivision (h), provides, "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by

17.

this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law." Pursuant to the California Rules of Court, "the court may consider the effect that striking the enhancement would have on the status of the crime as a strike, the accurate reflection of the defendant's criminal conduct on his or her record, the effect it may have on the award of custody credits, and any other relevant consideration." (Cal. Rules of Court, rule 4.428(b).) Factors in aggravation and mitigation include any that "reasonably relate to the defendant or the circumstances under which the crime was committed" (*id.*, rules 4.421(c), 4.423(c)), including "postsentencing conduct while in prison" (*Yanaga*, *supra*, 58 Cal.App.5th at p. 627). "Relevant factors enumerated in these rules *must* be considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise." (Cal. Rules of Court, rule 4.409, italics added.)

The probation report prepared in advance of the hearing on defendant's motion to strike the firearm enhancement was expressly confined to those factors that existed at the time of defendant's conviction and sentencing. The report excluded defendant's postconviction behavior from consideration, including his report of good behavior in prison and efforts to "turn[] his life around." The report reflected consideration only of defendant's youth and "any history of compliance/non-compliance he demonstrated at the time of the offense and conviction." Underscoring this limited view of mitigating factors, the trial court stated during the hearing that defendant's age was the only factor in mitigation.

These circumstances together expressly reflect a misunderstanding of the full scope of the trial court's sentencing discretion, and we are not persuaded by the People's position that the error was harmless. The facts in this case are difficult and unsympathetic: one 16-year-old juvenile shot another 16-year-old juvenile in the head, and the killing was motivated by gang rivalry. The trial court might still conclude that it is not in the interest of justice to strike the firearm enhancement.

18.

However, while the court took defendant's age into account, defendant is entitled to have the court also consider his postconviction behavior and his efforts at self-improvement in prison, as well as other relevant *Miller* factor evidence beyond his mere age. (Cal. Rules of Court, rules 4.409, 4.423(c).) To deprive defendant of the benefit of a hearing that includes consideration of relevant youth-related factors and his postconviction behavior is contrary to the rules of court governing the court's exercise of its discretion and it disregards the significant, postconviction shift in the law that followed recognition of the differences in moral culpability and brain development between juvenile offenders and adult offenders. (*O.G. v. Superior Court*, *supra*, 11 Cal.5th at p. 88.)

Under these circumstances, the record does not clearly reflect that the trial court would have declined to strike the enhancement even if it had been aware of the full scope of its discretion. (*People v. Gutierrez*, *supra*, 58 Cal.4th at p. 1391; accord, *People v. Bell* (2020) 47 Cal.App.5th 153, 199–200.) Therefore, it is appropriate to afford defendant another opportunity to request that either the juvenile court or the trial court, depending on the outcome of the transfer hearing under Proposition 57, exercise its discretion to strike the firearm enhancement in the interest of justice. (§ 12022.53, subd. (h).) The trial court shall consider all relevant factors, including those relating to postconviction conduct, whether positive or negative. (*Yanaga*, *supra*, 58 Cal.App.5th at pp. 627–628.)

## III. Entitlement to *Franklin* Hearing

Finally, defendant also seeks remand for a *Franklin* hearing. The People oppose his request for this form of relief.

Effective January 1, 2014, after the decision in *Miller*, section 3051 was added to the Penal Code to provide for youth offender parole hearings for those who committed

their controlling offenses before 18 years of age (§ 3051, former subd. (a)),[12] and offer "a meaningful opportunity to obtain release" (§ 3051, subd. (e)). (Stats. 2013, ch. 312, § 4, pp. 5–7.) The statute provides that "[i]n assessing growth and maturity, psychological evaluations and risk assessment instruments, if used by the board, shall be administered by licensed psychologists employed by the board and shall take into consideration the diminished culpability of youth as compared to that of adults, the hallmark features of youth, and any subsequent growth and increased maturity of the individual." (§ 3051, subd. (f)(1).)

In *Franklin*, the defendant, who was sentenced prior to the decision in *Miller*, challenged the constitutionality of his LWOP sentence for a murder he committed at the age of 16. (*Franklin*, *supra*, 63 Cal.4th at p. 268.) The California Supreme Court concluded that "the combined operation of section 3051, section 3046, subdivision (c), and section 4801 means that [the defendant] is now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration," which mooted his *Miller* claim. (*Franklin*, *supra*, at pp. 279–280.) However, the court remanded the case to allow the defendant a "sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing." (*Id.* at p. 284.) Subsequently, the California Supreme Court concluded in *Cook* that for those seeking relief under *Franklin* whose judgments are final, "the proper avenue is to file a motion in superior court under the original caption and case number, citing the authority of section 1203.01 and today's decision." (*In re Cook* (2019) 7 Cal.5th 439, 458 (*Cook*).)

In this case, defendant was resentenced pursuant to *Miller* and with the benefit of the decision in *Franklin*. He acknowledges this but argues that "a *Franklin* hearing will

---

[12] Section 3051 was subsequently extended to those who committed their controlling offenses when they were under 23 years of age or younger (Stats. 2015, ch. 471, § 1, pp. 1–3), and later to those who committed their controlling offenses when they were 25 years of age or younger (Stats. 2017, ch. 675, § 1, pp. 1–3).

give him the opportunity to show his additional efforts at rehabilitation and present additional information on how his background interacted with the impulsivity of youth to lead to his gang membership and the killing of a gang rival." Because defendant had the opportunity to make a sufficient record under *Miller* and *Franklin*, his remedy now lies with a motion filed in the trial court in the first instance rather than entitlement to remand for a *Franklin* hearing. (*Cook*, *supra*, 7 Cal.5th at p. 452; *People v. Medrano* (2019) 40 Cal.App.5th 961, 968.)

The requested relief—remand—is moot in any event given remand of the matter on other grounds. If defendant seeks to add to the record below on remand, "the trial court may 'exercise its discretion to conduct this process efficiently, ensuring that the information introduced is relevant, noncumulative, and otherwise in accord with the governing rules, statutes, and regulations.'" (*Cook*, *supra*, 7 Cal.5th at p. 459, quoting *People v. Rodriguez* (2018) 4 Cal.5th 1123, 1132.)

## DISPOSITION

Judgment is conditionally reversed, and this matter is remanded to the trial court with directions to refer the case to the juvenile court to conduct a juvenile transfer hearing. (Welf. & Inst. Code, § 707.) If, after conducting the juvenile transfer hearing, the juvenile court finds it would not have transferred defendant to a court of criminal (adult) jurisdiction, it shall treat defendant's conviction as a juvenile adjudication; exercise its discretion under section 12022.53, subdivision (h), as to whether to strike the firearm enhancement; and impose an appropriate disposition within its discretion.

If, after conducting the juvenile transfer hearing, the court determines it would have transferred defendant to a court of criminal (adult) jurisdiction because he is not a fit and proper subject to be dealt with under the juvenile court law, then defendant's sentence shall be reinstated. (Welf. & Inst. Code, § 707.1, subd. (a).) The trial court shall exercise its discretion under section 12022.53, subdivision (h), and determine whether to strike the firearm enhancement. If the trial court exercises its discretion to

21.

strike the firearm enhancement, it shall resentence defendant and transmit an amended abstract of judgment to the appropriate authorities.

MEEHAN, J.

WE CONCUR:

LEVY, Acting P. J.

FRANSON, J.